490 So.2d 182 (1986)
Marvin JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. BI-163.
District Court of Appeal of Florida, First District.
June 20, 1986.
Terry P. Lewis, Sp. Asst. Public Defender, Tallahassee, for appellant.
*183 Jim Smith, Atty. Gen., John W. Tiedmann, Asst. Atty. Gen., Tallahassee, for appellee.
SMITH, Judge.
Johnson appeals his convictions on six counts of grand theft, section 812.014, Florida Statutes (1983). He contends that the trial court erroneously denied his motion for judgment of acquittal on five of the six grand theft charges. Specifically, he asserts that the evidence at trial showed that there was only one theft, and that the aggregate value of the property taken was less than $100. We reverse.
Appellant was charged by amended information with six counts of grand theft, two counts of forgery, and two counts of uttering forged money orders, sections 812.014, 831.01 and 831.02, Florida Statutes (1983). The evidence presented at trial indicated that appellant and an accomplice, Gerald Wright, stole a series of money orders from a Kelly Junior Food Store located in Quincy, Florida, on November 11, 1984. Appellant admitted his participation in the crime to Robert E. Barkley, an investigator for the Quincy Department of Public Safety. In his confession, appellant indicated that he and Gerald Wright utilized a successful ruse in order to steal the money orders from the store on that date. According to appellant, he engaged the attention of a clerk on duty at the time, Kimberly Tyson, by striking up a conversation with Ms. Tyson at the back of the store, while Wright reached under the front counter and took a number of blank money orders, as well as a machine used by the store to stamp onto the money orders the value purchased. According to Barkley's testimony concerning appellant's confession, appellant stated that Wright "ran off" a number of money orders, filling in amounts ranging from $199 to $295, after which Wright returned the stamping machine to the store. Wright and appellant then fled.
Appellant's confession as to his role in the incident was partially corroborated by Kimberly Tyson, the front register clerk on duty at the time of the incident. Laverne Ponder, a bookkeeper for the store, testified that she discovered that a series of money orders were missing, sequentially numbered 952 through 964, on November 12, 1984. Ms. Ponder subsequently discovered two additional missing money orders, numbered 998 and 999, on November 14, 1984. Also testifying at trial was Dorothy Hale, an acquaintance of appellant, who testified that she cashed a money order for appellant at a Quincy IGA store, made out to her from a "Tommy L. Roberts." According to Hale, appellant paid her $20 to cash the money order. The trial testimony indicated that appellant cashed two other money orders prior to his arrest, one at a Gayfers store in Tallahassee and one at a Quincy IGA.
At the close of the state's case-in-chief, appellant made a motion for judgment of acquittal as to the six grand theft charges. Appellant's trial counsel argued that the money orders appellant allegedly stole were stolen during one criminal incident and, therefore, would support a conviction and sentence for only one charge of grand theft. Counsel also argued that the value of the money orders stolen was less than $100 since, according to counsel, the money orders had no intrinsic value until they became negotiable by the act of filling in the various sections of the money order. The trial court denied appellant's motion.
Appellant's first asserted basis for reversal, that only one grand theft was committed, implicates the double jeopardy clauses of the Florida and United States constitutions.[1] It is true, as asserted by the state, that current double jeopardy doctrine allows multiple convictions flowing from one criminal episode where a legislative intent to allow separate punishments is clear. *184 Rotenberry v. State, 468 So.2d 971, 975 (Fla. 1985). The corollary to this rule, however, is that the asserted legislative intent must be unambiguous. State v. Getz, 435 So.2d 789 (Fla. 1983). In analyzing a criminal statute to discern legislative intent, a strict reading is required, based upon the rule of lenity in construing penal statutes. Watts v. State, 440 So.2d 505, 507 (Fla. 1st DCA 1983), result approved, 462 So.2d 813 (Fla. 1985).[2]
Here, the statute under which appellant was prosecuted, section 812.014(2)(b)1, Florida Statutes (1983), provides that a person may be found guilty of grand theft if:
... the property stolen is (1) valued at $100 or more, but less than $20,000.
This statute is ambiguous on its face as to the allowable "unit of prosecution," since no limiting or expansive language such as "a" or "any" is used with reference to property stolen. Compare Grappin v. State, 450 So.2d 480 (Fla. 1984) (use of article "a" in reference to theft of firearms under section 812.014(2)(b)3 indicated legislative intent to allow multiple punishments for stealing a number of firearms from one person at the same time), with State v. Watts, 462 So.2d 813 (Fla. 1985) (use of word "any" in section 944.47 regarding possession of firearms in correctional institutions established legislative intent of single prosecution). Therefore, we hold that the trial court should have granted appellant's motion for judgment of acquittal on five of the six grand theft counts.[3]
Although our disposition of this case renders consideration of appellant's second argument concerning the money orders' value moot, we will address the issue as one of "general public interest and [continuing] importance," Dewberry v. State, 472 So.2d 792, 793 (Fla. 1st DCA 1985), receded from on other grounds in Wilkerson v. State, 480 So.2d 213, 214 (Fla. 1st DCA 1985). We agree with the trial court that under section 812.012(9)(a)2, Florida Statutes (1983),[4] the value of the stolen money orders would be reflected by the amounts stamped on them, since the result would be to render the money orders fully negotiable.
REVERSED and REMANDED for further proceedings consistent with this opinion.
BOOTH, C.J., and WENTWORTH, J., concur.
NOTES
[1] The state's initial argument that appellant's failure to raise this claim prior to trial, by way of a motion to dismiss, Florida Rules of Criminal Procedure 3.190(c)(4), constituted a waiver of the issue before this court is without merit. See, Evans v. State, 452 So.2d 1040 (Fla. 2d DCA 1984); c.f., State v. Johnson, 483 So.2d 420 (Fla. 1986) (criminal conviction based upon defendant twice being put in jeopardy for the same offense constitutes fundamental error).
[2] This rule has been codified at section 775.021(1), Florida Statutes (1983), which provides that:

(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible to differing constructions, it shall be construed most favorably to the accused.
[3] Contrary to the state's assertion, the trial testimony contains no evidence that the money orders numbered 998 and 999 were stolen at a different time from the remainder of the money orders.
[4] Section 812.012(9)(a)2, Florida Statutes (1983), provides in pertinent part:

... the value of the written instrument that does not have a readily ascertainable market value, in the case of an instrument such as a check, draft, or promissory note, is the amount due or collectible or is, in the case of any instrument which creates, releases, discharges, or otherwise effects any valuable legal right, privilege, or obligation, the greatest amount of economic loss that the owner of the instrument might reasonably suffer by virtue of the loss of the instrument.